[Civ. No. 13559. Second Dist., Div. One. June 14, 1942.]

JOHN D. MORRIS, Respondent, v. WILMA H. MORRIS, Appellant.

John B. Petermann and George J. Hider for Appellant.

D. A. Boone and James T. Satchell for Respondent.

DORAN, J.—In an action for divorce the wife appeals from an interlocutory judgment of divorce granted the husband as plaintiff and cross-defendant. The husband amended his complaint to conform to the proof offered at the trial, and the interlocutory decree was granted upon the cause of action thus added by amendment, namely, that the wife had deserted the husband through persistent refusal to have reasonable matrimonial intercourse, when health or physical condition did not make such refusal reasonably necessary. (Sec. 96, Civil Code) The wife's cross complaint was for separate maintenance based upon separate counts of extreme cruelty, wilful desertion, habitual intemperance and adultery; and upon all of such counts the court found against the wife as cross-complainant and in favor of the husband, upon evidence which the record reveals to have been conflicting. The wife, as appellant, contends that the court erred in granting an interlocutory decree in favor of the husband because the testimony of the husband as to the wife's refusal to have reasonable matrimonial intercourse was not corroborated; and further, that the evidence presented upon the causes of action set up in the cross-complaint supported the allegations thereof, and that the court erred in making findings contrary thereto.

Appellant in her testimony, given on behalf of respondent under section 2055, Code of Civil Procedure, admitted that she and respondent had not had matrimonial intercourse for a period of nearly two years prior to the filing of the complaint, giving as the reason therefor that respondent was in-

different and was troubled with a nervous ailment or sciatica. The only evidence in the record which might be classed as corroborative of the state of the matrimonial relationship of appellant and respondent was given by a witness on behalf of respondent, as follows:

"Q. Did you notice whether her attitude was pleasant towards him, or was it otherwise? A. It seemed very normal. Just the same as always. Q. How soon after that request was made did you leave? A. I couldn't tell you that. Q. Ever have any conversation with Mr. Morris about their relationship? A. No, sir. Q. Never spoke to him about it? Never made any comment on it? A. No, sir. Q. Then from your observation and your opinion were the Morrises ideally suited for each other? A. Well, that is a hard question to answer. I didn't think so. Q. Have you any opinion on that, have you ever drawn any opinion concerning that? A. Yes, I have. Q. Is it your opinion that they are or that they are not? A. Are not what? Q. Suited for each other. A. No, I don't think they are. Q. What prompts that opinion on your part? A. The fact that I was asked to go to the home of Mrs. Morris the first of August and stay with her. Q. That was the first of August of last year or this year? A. 1939. It was my month of vacation and I stayed there off and on during the whole month and then I had to go back to school—stayed there off and on at her request, and Mr. Morris also told me he was very, very glad I came out there to stay, that she needed me. I could not figure out what he meant. Q. During that time you did not note any unpleasantness between them? A. No. THE COURT: Did you ever notice any unpleasantness between them? A. I don't know. Mrs. Morris has lots of reserve and she certainly did not raise any fuss, but there were lots of things happened that would have caused her to. Q. Never heard any fuss raised then? A. He was not home enough. Q. What? A. He wasn't home enough to raise much. Q. Who was not home enough? A. Mr. Morris. Q. Were you there continuously during that period of time? A. On the first of August I went up and then June decided she needed me to stay— wanted me to stay, and I went down and stored my goods from my apartment, and then I went back up and I stayed off and on until the first of September. Q. What I mean is, were you there daily during that period of time? A. We both were at school. I stayed there nights. Q. You lived there? A. Yes. Q. Did Mr. and Mrs. Morris go out together

during that time? A. I can't remember whether it was during that period of time or not. Q. Do you recall any occasion during that time when they went out together then? A. No, not definitely. I couldn't say. Mr. SATCHELL: That is all." All that this testimony reveals is that the witness stayed at the home of the parties for a month, that the witness concluded from the circumstances under which, or the manner in which she was invited to stay at the home of the parties for that period, and from a remark made by the husband, that the parties were not suited to each other. The testimony is hardly sufficient to constitute corroboration of a refusal on the part of the wife to have reasonable matrimonial intercourse, particularly when viewed in the light of authorities upon the subject. See: *Ingraham* v. *Ingraham,* 40 Cal. App. 578 [181 Pac. 234]; *Lemberger* v. *Lemberger,* 55 Cal. App. 231 [203 Pac. 786]; *Ritter* v. *Ritter,* 103 Cal. App. 583 [284 Pac. 950]: "We are not unmindful of the fact that the secrets of the bedchamber are very frequently hard to substantiate by other witnesses than the parties themselves. Nevertheless, the parties to a divorce action are not thereby relieved from the necessity of complying with the mandate of the law." *Ingraham* v. *Ingraham, supra.* In denying a hearing in the Lemberger case, *supra,* the Supreme Court said: "The opinion of the district court of appeal appears to assume that in an action for divorce the testimony of one spouse may be accepted as sufficient corroboration of the testimony of the other for the purpose of making a cause of divorce for either. We think this assumption is contrary to the rule laid down in section 130 of the Civil Code. That section declares that no divorce can be granted upon the uncorroborated testimony of the parties. We understand this to mean that there must be evidence in support of the cause of action upon which a divorce is granted, in addition to the evidence of either or both of the parties to the action, and that the testimony of one party cannot be taken in corroboration of that of the other for the purpose of proving a cause of divorce."

Respondent contends that there is circumstantial evidence corroborative of the testimony of the parties. There is, however, a complete absence of any such corroborating circumstances in the record. Respondent also contends that the case of *Newman* v. *Newman,* 122 Cal. App. 298 [9 P. (2d) 894], is most closely applicable to the facts of the instant

case. In the Newman case both the husband and wife testified that they had lived separate and apart after the husband left the home nearly two years prior to the trial, and a witness testified that he and the husband lived at the same hotel and that from about a month after the separation down to the time of trial the wife was not living at the hotel with her husband. In the instant case the husband and wife continued to live together under the same roof, and the only testimony touching upon their relations was that of a friend of the wife who had stayed at the home ''off and on'' for a month. It is readily seen that the testimony given in the instant case does not even remotely approach the evidence in the Newman case. *Goucher* v. *Goucher,* 82 Cal. App. 449 [255 Pac. 892], and *Fulton* v. *Fulton,* 220 Cal. 726 [32 P. (2d) 634], cited by respondent, do not support his contentions. In the Goucher case the court stated that the necessary corroboration of the positive and uncontradicted testimony of both parties had been amply supplied by the numerous circumstances fairly arising from the mass of testimony given by other witnesses in support of the causes urged for a divorce. In the Fulton case it was not the testimony of the defendant which was taken as corroboration of plaintiff's cause for desertion, but the undisputed fact that defendant left plaintiff's house and went out of the state, and, after remaining away for some time, returned the next year to the state but did not return to plaintiff's home; and these facts do not appear from the case to have been established by the testimony of the parties alone.

While the court erred in finding for the respondent husband upon his uncorroborated cause of action on the ground of desertion, the findings against the appellant wife's counts for separate maintenance, based as they are upon conflicting evidence, may not be disturbed.

For the foregoing reasons the interlocutory judgment of divorce is reversed.

York, P. J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 13, 1942.