[Civ. No. 22789. Second Dist., Div. Two. Mar. 18, 1958.]

GRACE H. PEER, Petitioner v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Clyde A. Jones for Petitioner.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, and Richard L. Riemer, Deputy County Counsel, for Respondent.

RICHARDS, J. pro tem.*—Petitioner seeks review and annulment of an order of the superior court imposing upon her a charge for a portion of the sanitarium care of her husband, George T. Peer, pursuant to the provisions of section 5077 of the Welfare and Institutions Code in connection with proceedings under said code, committing him to a sanitarium as a mentally disordered person.

On September 19, 1955, pursuant to a petition filed under section 5047 of said code alleging petitioner's husband to be mentally ill, he was found under section 5076 to be mentally disordered and was committed to a sanitarium for care. He was returned to the court for reevaluation on September 24, 1956, at which time the matter was dismissed by the court at the request of petitioner so that she could care for him under the supervision of her own physician. The reports of the counselor in mental health made to the court pursuant to section 5029 of said code, and a part of the record before us, show that on March 26, 1957, petitioner filed an action for divorce against Mr. Peer; that an interlocutory decree of divorce was granted to petitioner by default on May 31, 1957, and that there was no property settlement agreement of record in connection with the divorce proceeding. Thereafter a new petition under section 5047 was filed on July 15, 1957, and on August 8, 1957, Mr. Peer was again found to be mentally disordered and was committed to the care of the counselor in mental health to be placed in a sanitarium. Thereafter on August 15, 1957, a further hearing was had to determine the petitioner's liability for the cost of her husband's care, at which hearing petitioner was neither present nor represented by counsel, and following which hearing the court made its order under section 5077, determining that the cost for the care of the patient was $120 per month, to be defrayed out of his estate at $69.70 a month, and that the balance of $50.30 a month be a charge upon the petitioner.

Welfare and Institutions Code, section 5076, provides in essence that if the court finds a person to be "mentally disordered and bordering on mental illness" it may "commit him to be placed in a suitable home, sanitarium, or rest haven home, subject to the provisions of the counselor in mental health and the further order of the court." The pertinent provision of section 5077 provides that "[t]he reasonable cost of maintenance of a person committed under the provisions

*Assigned by Chairman of Judicial Council.

of section 5076, in a sum to be fixed by the court at the time of the commitment, shall be defrayed out of the estate of the patient so committed, or shall be a charge upon his relatives *liable for his maintenance."* (Emphasis added.)

The record here shows that prior to the filing of the petition on July 15, 1957, the petitioner had obtained an interlocutory decree of divorce. ■ It is established that, whereas an interlocutory decree of divorce does not dissolve the marriage or terminate the relationship of husband and wife (*Estate of Abila,* 32 Cal.2d 559, 560 [197 P.2d 10]; *Deyoe* v. *Superior Court,* 140 Cal. 476 [74 P. 28, 98 Am.St.Rep. 73]; *Pereira* v. *Pereira,* 156 Cal. 1, 10 [103 P. 488, 134 Am.St.Rep. 107, 23 L.R.A. N.S. 880]; *Estate of Dargie,* 162 Cal. 51, 53 [121 P. 320]), such decree does terminate the obligation of support in the absence of a provision therefor. (*Estate of Abila, supra,* p. 560; *London Guar. & Acc. Co.* v. *Industrial Acc. Com.,* 181 Cal. 460 [184 P. 864]; *McClure* v. *McClure,* 4 Cal.2d 356, 359-360 [49 P.2d 584, 100 A.L.R. 1257].) ■ In the absence of a property settlement agreement, and the record herein discloses there was none, any award of support in the divorce proceeding to the husband as against whom the decree was granted would have been in excess of the jurisdiction of the court and void. (*Goldberg* v. *Goldberg,* 144 Cal.App.2d 402, 404 [301 P.2d 5]; *McLaughlin* v. *Superior Court,* 128 Cal. App.2d 62, 65 [274 P.2d 745].) Therefore, it cannot be presumed that there was any provision in the interlocutory decree imposing an obligation on petitioner to support her husband and the record discloses no other evidence that the petitioner had assumed any liability for his support.

Respondent contends that the petitioner's liability for maintenance of her husband commenced upon his prior commitment as a mentally disordered person and that such liability was not terminated by the divorce proceeding and relies upon *Plath* v. *Industrial Acc. Com.,* 109 Cal.App. 349 [293 P. 89] in support of this contention. In *Plath* v. *Industrial Acc. Com.* it appears that the wife deserted her husband and was thereafter adjudged insane and committed to a state hospital. Her husband was later killed in an industrial accident. It was contended on behalf of the wife that at the time of her husband's death he was legally liable for her maintenance as an insane person under the provisions of Political Code, section 2176, and that she was therefore conclusively presumed to be a dependent under section 14 of the Work-

men's Compensation Act. Agreeing with the commission that under Civil Code, section 175, the husband was relieved of liability for his wife's support by reason of her desertion, the court held that Political Code, section 2176, did not impose a new liability upon the husband when his wife became insane and that said section imposed a liability "only in those cases in which liability existed in favor of the wife at the time she became insane" (p. 352). Welfare and Institutions Code, section 6650, is based on former Political Code, section 2176, above referred to and provides that "The . . . wife . . . of a mentally ill person . . . shall cause him to be properly and suitably cared for and maintained. . . . The . . . wife . . . of a mentally ill person . . . shall be liable for his care, support, and maintenance in a state institution of which he is an inmate. . . ." It is our conclusion that any liability of the petitioner created by said section 6650 at the time Mr. Peer was first found to be mentally disordered terminated with the dismissal of the previous proceeding on September 24, 1956, and that subsequent to that date any liability for his maintenance under Civil Code, sections 155 and 176, was, as we have previously stated, in the absence of an agreement to support her husband, terminated by the interlocutory decree of divorce on May 31, 1957.

It thus appears that the petitioner was not "liable for his maintenance" when the subsequent petition of mental illness was filed July 15, 1957, or on August 8, 1957, when Mr. Peer was found to be mentally disordered or on August 15, 1957, when the challenged order was made under section 5077 imposing upon petitioner a charge for a portion of the sanitarium care of the patient.

So much of the order of August 15, 1957, as imposes a charge upon petitioner for the care of the patient in a sanitarium is annulled.

Fox, P. J., and Ashburn, J., concurred.