[Civ. No. 18548.   First Dist., Div. One.   Feb. 19, 1960.]

LAURA ELIZABETH WISELY, Appellant, v. COLES WISELY, Respondent.

James Martin MacInnis, Joseph F. X. Murphy and Kathryn Gehrels for Appellant.

Alexander Sherriffs, Charles E. Luckhardt and Rankin, Oneal, Luckhardt & Center for Respondent.

BRAY, P. J.—Plaintiff and cross-defendant wife appeals from a judgment of divorce granted defendant and cross-complainant husband.

### QUESTIONS PRESENTED

1. Did the court err in granting a divorce to defendant *alone*?

2. Alleged error in (a) placing a condition on an award to plaintiff of $250 per month for three years; (b) finding that securities were community property rather than held in joint tenancy.

### RECORD

Plaintiff sued defendant for divorce on grounds of extreme cruelty and desertion based upon denial of matrimonial intercourse. After first answering only, defendant later filed a cross-complaint for divorce upon the grounds of refusal of matrimonial intercourse and extreme cruelty. Thereafter plaintiff filed a supplemental complaint in which she added to the allegations of cruelty in the original complaint, a charge that defendant without sufficient reason had her confined in

Agnews State Hospital. The court granted defendant an interlocutory decree of divorce on the ground of extreme cruelty, denied plaintiff's demand that a divorce be also granted her, awarded plaintiff a $13,000 insurance policy on defendant's life, required that defendant maintain the policy in force, divided certain personal property which the court found to be community property, consisting of corporate stock, a truck and household furniture, equally between the parties, and awarded defendant social security benefits amounting to $108.50 per month and retirement benefits amounting to $395 per month. Additionally the decree provided that if plaintiff would remove from the home, which the parties agreed and the court found was held in joint tenancy, plaintiff should receive one-half of the net rental thereof plus for three years $250 per month to be paid from the social security and retirement benefits awarded defendant.

1. *The Divorce.*

Plaintiff's main contention is that the court erred in denying plaintiff alimony which this court should remedy either by reversing, on the grounds of insufficiency of evidence, the judgment granting defendant a divorce, or by ordering the entry of a divorce for plaintiff as well.

The parties were married in 1928 and separated in November, 1956. There are no children. Plaintiff does not contend, in view of the well known rule that this court is bound by the determination of the trial court on controverted testimony, that the acts of cruelty alleged in defendant's cross-complaint and found by the court were not proved. She contends, however, that such acts were done not purposefully or maliciously, but because of illness in which "she could not control the outpourings of her mind." However, the evidence amply shows that although at times plaintiff's mental condition was a somewhat disturbed one, this was not the cause of her acts but that they were due primarily to her intense jealousy and unfounded accusations of interest of defendant in other women.

Plaintiff contends that she, aged 60,* and not physically well, should have been granted alimony, and as the court has no power to do so when the husband was granted the divorce (see *Peer* v. *Superior Court* (1958) 158 Cal.App.2d 477, 479 [322 P.2d 529]), the court should have also granted the wife a divorce. However, the court had no power to grant

---

*Defendant is 67 and retired from business.

plaintiff a divorce unless she proved grounds therefor. She failed to prove her charges of cruelty. The two witnesses she called to corroborate her testimony as to these charges completely failed to do so. It is true that subsequent to the filing of the divorce complaint by plaintiff, defendant had her committed to Agnews where she remained about 15 days and was then released. Concerning this, defendant testified that about a week prior to his filing a petition for her commitment plaintiff suffered some sort of spell or coma which lasted two or three days. Plaintiff had undergone similar experiences previously and defendant had called in Christian Science practitioners to care for plaintiff, she belonging to that sect. On this occasion plaintiff attempted to build a fire in the middle of the living room floor of their home. Defendant again called the Christian Science practitioner. Thereafter a conference was had between defendant and his attorney, plaintiff's attorney and Carl W. Calbreath, Clerk of the United States District Court, who was a friend of the parties, as a result of which defendant went to the district attorney's office for guidance and there requested that an examination be made of plaintiff's mental condition. Upon advice of the deputy district attorney defendant signed the commitment papers. The court found that defendant was not guilty of any act of cruelty in so doing.

Both parties agreed that there had been no marital intercourse since 1951, both contending that it was the fault of the other. The trial court believed the husband's version. We cannot say that the court should not have done so. Plaintiff cites *Hayes* v. *Hayes* (1904), 144 Cal. 625 [78 P. 19], and *Ritter* v. *Ritter* (1930) 103 Cal.App. 583 [284 P. 950], contending that defendant failed to prove that plaintiff's health and physical condition did not make her refusal to have sexual intercourse with him necessary. Those cases are not applicable to the situation here. Plaintiff denied that she refused defendant and contended that he was the one who refused. Thus, the condition of her health was not an issue in this respect. Defendant testified that plaintiff's refusal was because of her unfounded charges of infidelity on his part which charges the court found to be untrue. Unfounded charges of this kind cannot justify the wife's refusal to have reasonable intercourse with her husband, and moreover may be considered as grounds of cruelty. *Annen* v. *Annen* (1926), 79 Cal.App. 626 [250 P. 580], and *Truax* v. *Truax* (1944), 62 Cal.App.2d 441 [145 P.2d 88], which held that a husband

has not established grounds of extreme cruelty where it appears that the wife charged him with more acts of infidelity than she proved, obviously are not in point.

2. (a) *Condition on Award.*

■ The principal property of the parties was the home which after the entry of the decree was sold by the parties for $44,000 (and the proceeds divided equally). It was joint tenancy property. The court seemed quite disturbed because plaintiff insisted on living in it, instead of moving out so that it could be rented. Unfortunately, the court made some rather injudicious remarks on this and other subjects. In the decree it found that the home was joint tenancy property, but provided that if plaintiff would remove therefrom the defendant must pay her, in addition to her share of any rentals from the property, the sum of $250 per month for a period of three years, from the social security and retirement benefits awarded him. The questions raised by plaintiff concerning this portion of the judgment have become moot in view of the fact that after entry of the judgment the parties sold the property and divided the proceeds equally. Thus, plaintiff has actually been deprived of none of her joint tenancy rights. So far as the award of $250 per month being made contingent upon her removing from the home is concerned, plaintiff was not injured thereby as the court had no power, in view of the fact that it granted the divorce to the husband, to award her any support. (*Peer* v. *Superior Court, supra,* 158 Cal. App.2d 477, 479.) Therefore, plaintiff cannot complain because the court put a condition upon an award in her favor which award it had no power to make either with or without conditions.

(b) *Securities.*

■ The securities which the court found were community property and divided equally, were mostly issued to the parties in joint tenancy. ■ While a declaration in an instrument that spouses are to take as joint tenants destroys the statutory presumption that the property is community property and raises the presumption that the legal title is in the parties as joint tenants, evidence may be admitted to establish that the property evidenced by the joint tenancy instrument is community property, and that the parties actually intended it to be community property. (*Estate of Jameson* (1949), 93 Cal.App.2d 35, 42 [208 P.2d 54].) ■ Thus, defendant was entitled to prove that the parties in-

186

tended to convert their joint tenancy personal property holdings into community property. This defendant did to the satisfaction of the trial court. Defendant testified that he was the one who gave the directions that both names were to appear on the certificates of stock, that the placing of the joint tenancy declaration was done by those issuing the stock without his instructions, that he told plaintiff merely that he had had both names placed upon the stock. Moreover, the companion wills of the parties were introduced in evidence, showing that therein the parties treated all of the property as if it were community property and not joint tenancy property. These facts were sufficient to prove an agreement between the parties that they intended it to be classified as community property. (See *Estate of Jameson, supra,* 93 Cal. App.2d 35, 42.) Also the evidence supports the court's implied finding that the parties treated as community property plaintiff's separate moneys which were commingled with the community moneys and property.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.